RICHARD D. APER, Appellant, *v.* THE INDUSTRIAL COMMISSION OF ILLINOIS *et al.* (Caterpillar Tractor Company, Appellee).

Third District (Industrial Commission Division)    No. 3—84—0127WC

Opinion filed August 2, 1984.

James E. Bowles, of Goldfine & Bowles, of Peoria, for appellant.

Robert F. Fahey, of Peoria, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Richard D. Aper, filed an application for adjustment of his claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) for a knee injury suffered in a November 1, 1978, accident. An arbitrator awarded benefits for temporary disability as well as for permanent and complete loss of the right leg to the extent of 35% thereof, with deduction for a previously compensated award for permanent and complete loss of the right leg to the extent of 10% thereof. The Industrial Commission modified the decision of the arbitrator by deleting the award for permanent and complete loss, finding that Aper had not permanently lost any use of the

right leg as a result of the November 1, 1978, accident. The Circuit Court of Peoria County confirmed the decision of the Commission, and this appeal followed. Petitioner did not participate in oral argument before this court.

Petitioner was the sole witness at the hearing before the arbitrator. His testimony was in pertinent part as follows.

On November 1, 1978, Aper was working for respondent, Caterpillar Tractor Company, when an engine block upon which he was working moved unexpectedly and pinned his right leg against two other blocks. The knee was bruised and swollen. He was carried to first aid. Dr. Bacon at Caterpillar heat-treated the leg for one month and put Aper on light duty. Aper consulted Dr. Louis L. Watson, Jr., who performed an arthrogram and an August 1979 arthroscopy on the knee. Aper recalled no knee trouble prior to 1978. Aper was also injured while working for respondent in 1971 when an engine block fell against the same leg. A nail penetrated the calf, and the thigh, knee, and calf were swollen, but Dr. James J. Flaherty told him the knee was uninjured.

Exhibits of record include reports from four doctors: Flaherty, Watson, Horacio Rivero, and Hugh Cooper. Dr. Flaherty's two reports were based on October 27, 1971, and August 7, 1972, examinations of Aper. The first report notes a history of an October 25, 1971, accident and states a finding of "effusion" of the knee. The second report states Aper's complaint of buckling of the knee and Dr. Flaherty's finding of circumferential thigh atrophy. Dr. Watson's October 2, 1979, letter to Aper's attorney states, after a history of the 1978 accident, that the January 1979 arthrogram showed no evidence of torn cartilage. According to this letter, Aper's complaints continued, and the arthroscopy revealed an absence of the anterior cruciate ligament. The letter termed this a significant injury which would result in permanent disability.

Dr. Cooper's report was introduced on review before the Commission. It recited a January 21, 1980, examination of Aper. No 1971 accident was mentioned. After relating a history of the 1978 accident, this report states that it resulted in a hyperextension injury to the knee. The report states that except for mild quadriceps atrophy the knee appeared normal; the rupture to the anterior cruciate ligament revealed by the arthroscopy could not be detected, leading to the conclusion that compensatory mechanisms had successfully masked the loss.

In denying permanent disability benefits based on the 1978 accident, the Commission found *inter alia*: (1) Dr. Flaherty's report, not-

ing effusion of the knee, thigh atrophy, and Aper's complaints of knee buckling, established that the 1971 accident did affect the knee; (2) Dr. Watson's reports did not indicate that the absent ligament was a result of the 1978 injury; and (3) since the thigh atrophy existed prior to 1978 and the leg's compensatory mechanisms had masked the loss of the ligament during two clinical examinations, one two months and the other 15 months after the 1978 injury, the ligament apparently was missing prior to the 1978 injury.

Aper contends that a "common sense" reading of Dr. Watson's report of October 2, 1979, requires the conclusion that Dr. Watson believed there was a causal connection between the 1978 injury, the only one described therein, and the permanent disability Dr. Watson observed. Aper also urges that Dr. Cooper's report, again referring only to the 1978 injury and stating that "some mild permanent disability has resulted from the injury," establishes causal connection to the 1978 injury. Aper also argues that the Commission found that the leg's compensatory mechanisms had eliminated any permanent disability, despite uncontradicted evidence of permanent disability.

■ ■ The Commission is entitled to draw reasonable inferences from medical testimony, and a court will not disregard permissible inferences merely because others might have been drawn. (*Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 406-07, 459 N.E.2d 963, 966.) Here, there was ample evidence to justify the Commission's decision. First, Aper misconstrues the Commission's decision as reflecting a finding that his injured leg was not permanently disabled to some extent. The Commission actually found that the November 1, 1978, accident had not caused any of the permanent loss of use of that leg sustained by Aper. The Commission thus implied that the extent of permanent loss of use of that leg suffered by Aper was due to the 1971 accident. The latter conclusion was sufficiently supported by the evidence expressly relied upon by the Commission in its written decision and summarized above.

Aper attempts to read an unwarranted conclusion into Dr. Watson's October 2, 1979, report. That report merely recites Aper's description to Dr. Watson of the 1978 injury and of Aper's subsequent complaints and the treatment applied. There is no indication that Dr. Watson was aware of the 1971 injury. Had there been some manifestation of knowledge on Dr. Watson's part of the preceding injury, a statement by Dr. Watson as to causation would have been entitled to some weight. However, Dr. Watson's report shows no attempt to differentiate between disability caused by the 1978 injury and the 1971 injury.

Since Dr. Cooper's report does not refer to the 1971 injury, it also is of little value in establishing what disability, if any, was caused by the 1978 accident. Dr. Cooper's report does not require a conclusion contrary to that of the Commission on the issue of causation.

Aper also urges that no doctor suggested that the missing ligament must have been missing for a long period of time in order to give rise to the observed compensatory mechanisms in the leg. We reject petitioner's contention that the Commission erred in finding that since the leg's compensatory mechanisms were successfully masking the loss of the ligament just two months after the 1978 injury, those compensatory mechanisms were most likely at work prior to the 1978 injury, causing any resulting disability to have preexisted the 1978 injury. We find no evidence to the contrary of record.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SEIDENFELD, P.J., and BARRY, McNAMARA, and WEBBER, JJ., concur.